IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

JOELYN AGUAYO DIAZ

DEBTOR

CASE NO 20-02865 MCF

CHAPTER 13

## DEBTORS' REPLY TO *UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN AND MOTION TO DISMISS CASE UNDER 11 U.S.C. 1307* DOCKET NO. 16

TO THE HONORABLE COURT:

**COMES NOW, JOELYN AGUAYO DIAZ,** the Debtor in the above captioned case, through the undersigned attorney, and very respectfully states and prays as follows:

### I.    Introduction:

1. On September 25, 2020, the United States Trustee's Office ("UST") filed a *United States Trustee's Objection to Confirmation of Chapter 13 Plan and Motion to Dismiss*, Docket No. 16, objecting to the confirmation of the Debtor's proposed Chapter 13 Plan under 11 USC Section 1325(a)(3) and requesting the Court to enter a dismissal order under 11 U.S.C. Section 1307(c), in the above captioned case.

2. The grounds for UST's objection and request for dismissal are that since the Debtor's post-petition wages, as an employee of an employer that operates a State legal marijuana business, are property of the estate, 11 USC Section 1306, and the Debtor relies on these wages to make the proposed Plan payments to the Chapter 13 Trustee, the Plan may not be confirmed and the case should be dismissed. *United States Trustee's Objection to Confirmation of Chapter 13 Plan and Motion to Dismiss*, at page 1, paragraph B, Docket No. 16.

2

3. The contested matter before the Court presents a challenge to our society's evolution concerning legislation in favor of the medical or recreational use of marijuana at the State level *vis a vis* the "marijuana as a punishable crime" position held by the Federal Government towards this matter.

4. The divergence between State Governments' marijuana policies and the Federal Government's treatment of marijuana as a Federal crime, with the constitutional and public policies issues that ensue, certainly does have a bearing on the health, ethical, religious and economic concerns of a common citizen in our society.

5. Specifically, the present case brings before the Court one of the most remote victims of the above described conflict: a single mother who in a depressed job market obtained a clerical job working for a State legal marijuana business/employer and that due to her clerical job, this common citizen and now a "debtor" in a bankruptcy case, is being threatened to lose her Chapter 13 Bankruptcy protection and her case dismissed because the Federal Government does not want its Trustee to handle "Federal illegal drug" related wages/funds.

6. The Debtor respectfully states that the UST is unfairly stretching its policy arm by applying its Federal anti-marijuana policy against the Debtor in the present case since the Debtor is merely an accounting clerk who does not owns, operates, manages, and/or controls the  State legal marijuana business where she is gainfully employed.

7. Therefore, the Debtor respectfully states that the Debtor may be a "debtor" under 109(g), that there is no "cause" to dismiss the present case, that the Debtor's proposed Chapter 13 Plan complies with all confirmation requirements under 11 U.S.C. Section 1325 and the same may be confirmed over the UST's objection to Plan confirmation and motion to dismiss, Docket No. 16, in the above captioned case.

3

## II. COUNTER STATEMENT OF UNDISPUTED FACTS:

8. On July 21, 2020, the Debtor Joelyn Aguayo Diaz filed a Chapter 13 voluntary petition, case number 20-02865 MCF13.

9. The reason for filing the present bankruptcy case is that after the passage of hurricane Maria through Puerto Rico, September, 2017, the Debtor lost her job and was unable to pay her creditors, specifically the Debtor incurred in arrears in her car loan payments.

10. As of the date of the filing of the present bankruptcy petition, the Debtor was in arrears in said car loan payments in the sum of $11,254.14 (Claim No. 5-1) and its secured creditor was trying to repossess its collateral: the Debtor's 2016 Toyota Yaris.

11. The Debtor needs her motor vehicle to travel to and from work since she resides in Caguas and her place of employment is in Bayamon, Puerto Rico, which is approximately a two-hour travel time each day.

12. The largest listed creditor in the present Chapter 13 case is Cooperativa A/C Del Valenciano, a secured creditor as per Claim No. 5-1, in the sum of $17,709.09, for the above described car loan.

13. Other unsecured creditors (priority and general unsecured) have filed claims totaling the sum of $5,932.28, in the above captioned case.

14. As per the *Debtor's Amended Schedule "I"*, Docket No. 11, the Debtor discloses that she works in "accounting" for *Healthweed, LLC* a State legal marijuana business. The Debtor has been employed at *Healthweed, LLC* for one year and six months. *See*: *Debtor's Amended Schedule "I"*, at page 1, Docket No. 11.

4

15. The Debtor earns $600.00 gross per week or $2,600.00 per month. The number of persons in the Debtor's household is three (the Debtor and her two minor age sons/10 and 6 years old). *See*: *Debtor's Amended Schedule "I"*, at page 1, Docket No. 11.

16. The Debtor also discloses that she receives a DSO monthly income of $400.00 ($200 for each son). *See*: *Debtor's Amended Schedule "I"*, at page 1, Docket No. 11.

17. As per the Debtor's *Schedule "J"*, Docket No. 01, the Debtor's "disposable income" is $475.00 to pay a proposed Chapter 13 Plan of $475.00 for 60 months, for a total base of $28,500.00. The Debtor's proposed Plan provides for payment in full (100%) to Cooperativa A/C Del Valenciano, Claim No. 5-1 (the car loan), pro-rate disbursements to the general unsecured creditors, and payment in full of all administrative claims (attorney's and trustee's fees).

18. The Chapter 13 Trustee issued an "unfavorable" *Trustee's Report on Confirmation*, Docket No. 22 which states as follows:

> "[X] Other: Pending adjudication of United States Trustee's objection to confirmation of plan and Motion to Dismiss Case at dkt#16. Debtor filed a Motion requesting extension of time dkt#19 to Reply objection to confirmation and motion to dismiss." *Trustee's Report on Confirmation*, Docket No. 22

19. On September 28, 2020, the Debtor requested an extension of time within to reply to the United States Trustee's objection to confirmation and motion to dismiss, Docket No. 19 and the Court granted the requested extension of time, *ORDER*, Docket No. 23, due by November 27, 2020.

## III. LEGAL ARGUMENT

### A. PUERTO RICO'S MEDICAL CANNABIS ACT.

20. The Commonwealth of Puerto Rico is one of numerous States that have legalized the **medical** use of marijuana.

5

21. Since July 09, 2017, Law Number 42-2017 of the Commonwealth of Puerto Rico, the *Act to Manage the Study, Development and Investigation of Cannabis for Innovation, Applicable Norms and Limitations*, also known as the *Medical Cannabis Act*, created a legal framework for dealing with medical cannabis; establishing its medical and scientific research and uses within the federal regulatory framework; creating a Regulatory Board; and providing a control structure.

22. Under Law 42-2017, the following business activities are permissible, when properly licensed: cultivation, manufacturing, dispensing, operating laboratories, and transportation of medical cannabis.

**B. FEDERAL CRIMES RELATED TO MARIJUANA.**

23. However, at the Federal level, marijuana remains a Schedule I controlled substance under the Federal *Controlled Substances Act*, 21 U.S.C. Sections 801-904.

24. The *Controlled Substances Act* ("CSA") prohibits, among other things, the manufacture, distribution, dispensing of, or possession with intent to manufacture, distribute, or dispense, a controlled substance. 21 U.S.C. Section 841(a).

25. Specifically, the operation of a medical marijuana dispensary, owning or renting a place operating as such a dispensary, also would be a federal crime under 21 U.S.C. Section 856(a), which section states as follows:

"Except as authorized by this subchapter, it shall be unlawful to—

(1) knowingly open, lease, rent, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing or using any controlled substance;

(2) manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant or mortgagee, and knowingly

6

and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance."

26. Moreover, a party can be liable for aiding and abetting any Federal crime. *See* 18 U.S.C. Section 2(a) "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as principal."

27. The term "aid and abet" is defined as "that kind of connection with the commission of a crime which, at common law, rendered the person guilty as a principal in the second degree. It consisted in being present at the time and place and doing some act to render aid to the actual perpetrator of the crime, though without taking a direct share in its commission". Black's Law Dictionary, 2nd Ed.

28. Aiding and abetting requires proof that (i) someone else committed the underlying crime and (ii) the alleged aider/abettor "willfully associated himself with the criminal venture and [sought] to make the venture succeed through some act of his own". *United States v. Leos-Quijada*, 107 F.3d 786, 794 (10th Cir. 1997).

C. **THE UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION AND DISMISSAL MOTION.**

29. The United States Trustee (the "UST") objects to the confirmation of the Debtor's proposed Chapter 13 Plan on several grounds, including that the Bankruptcy Court cannot allow bankruptcy protection to a debtor involved in medical cannabis since "... [A] federal court cannot be asked to enforce the protections of the Bankruptcy Code in aid of a Debtor whose activities constitute a *continuing* federal crime." *United States Trustee's Objection to Confirmation and Motion to Dismiss Case Under 11 U.S.C. Section 1307*, at pages 6 and 7, Docket No. 16.

7

30. The UST argues that "[A]ny engagement in an unlawful marijuana business-whether the activities will fund the plan in whole or in part-precludes the Debtor from obtaining federal bankruptcy relief that promotes and facilitates those same activities …". *Idem.,* at pages 6 and 7.

31. Moreover, the UST argues that the Debtor, as an assistant accountant for a marijuana enterprise, engages in the "…illegal activity of possessing and facilitating the distribution of marijuana in violation of the CSA. …" and since the Chapter 13 plan proposed by the Debtor "… relies on the wages from this ongoing illegal activity to effectuate the chapter 13 plan…" the same is not confirmable since it fails the good faith requirement under 11 U.S.C Section 1325(a). *Idem.,* at pages 5, 11.

32. "[P]lans that facilitate the continuing post-petition violation of federal law are proposed in bad faith, and confirmation should be denied by the Bankruptcy Court." *Idem.,* at page 5.

33. In summary, the UST objects to the confirmation of the Debtor's proposed Chapter 13 Plan on the grounds that a Bankruptcy Court should not approve a Chapter 13 Plan of debtors with marijuana income. In its objection and request for dismissal, Docket No. 16, the UST states as follows:

"In the case of Ms. Aguayo, her wages result from illegal activity that violate federal law under the CSA. These illegal wages cannot be remitted to the Chapter 13 trustee. The chapter 13 plan should not be confirmed as it would be funded by continuing illegal activity and wages of Ms. Aguayo. If the plan cannot be confirmed, the case must be dismissed. *Idem*, at page 10.

8

**D. <u>THE MERE PRESENCE OF MARIJUANA IN A BANKRUPTCY CASE
DOES NOT AUTOMATICALLY PROHIBIT A DEBTOR FROM
BANKRUPTCY RELIEF.</u>**

34. In the present case, the Court must define what are the boundaries in the link between the debtor and marijuana for a debtor to obtain relief under the Code, in other words, the Court should look at the connection between the debtor and marijuana before deciding whether that connection is grounds for denial of confirmation and case dismissal.

35. "...[A] bankruptcy filing by an individual or entity with ties to a marijuana business raises difficult issues regarding how involved the debtor may be in that business and still be permitted to seek relief under the Code." *In re Burton*, 610 B.R. 633, 637 (9th Cir. 2020).

36. In the case of a business owner involved in the cultivation or sale of marijuana, it makes sense that a federal court cannot approve a bankruptcy plan that relies on income from a business that is illegal under federal law.

37. However, in the present case, the Debtor is not a business owner involved in the cultivation or sale of marijuana. Neither is the Debtor a "manager" or has "any control" of her employer's marijuana dispensary business. *See*: 26 U.S.C. Section 856(a).

38. In the present case, the Debtor is an assistant accountant at the accounting department of a State legal marijuana business. The Debtor's wages stem from a clerical work that the Debtor performs at the accounting department located at the "home office" of the Debtor's employer which is a State legal marijuana business.

39. It is the Debtor's position that in the present case the Debtor is far enough "downstream" for the Bankruptcy Court to allow relief. *See*: Matthew W. Hoelscher, *Legalization and Reorganization: Marijuana in Chapter 13*, NACTT Quarterly Vol 31, No. 1, at page 21, 2018.

9

40. Since the Court must articulate the factual and legal basis for denying confirmation and dismissing a case involving marijuana, the Court must make a finding that the Debtor is involved in an illegal business to such a degree that the Debtor is violating the CSA and that her wages are earned from this ongoing illegal activity that would require the trustee to administer assets that are illegal under the CSA or that are proceeds of activity criminalized by the CSA. *In re Burton*, 610 B.R. 633, 638 (9th Cir. 2020), *citing*: *Arenas v. U.S. Tr. (In re Arenas)*, 535 B.R. 845, 853 (10th Cir. 2015); *In re Way to Grow*, 597 B.R. 111,120, (Bankr. D. Colo. 2018); *In re Medpoint Mgmt.*, 528 B.R. 178, 184-85 (Bankr. D. Ariz. 2015); *In re Johnson*, 532 B.R. 53, 56-57 (Bankr. W.D. Mich. 2015); *In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. 799, 810 (Bankr. D. Colo. 2012).

41. "A bankruptcy court must be explicit in articulating its legal and factual basis for dismissal in cases involving marijuana". *In re Burton*, 610 B.R. 633, 638 (9th Cir. 2020) *citing*: *In re Olson*, 2018 WL 989263 in which the 9th Circuit Court of Appeals remanded the case because the bankruptcy court did not state the legal standard for dismissal or make specific findings to support its decision.

42. In the *Olson*, *supra*., case, the appeals court did not provide guidance on what the proper evaluation is for marijuana-related cases, but, by remanding the case for further findings, it did in essence reject a *per se* rule that a case must be dismissed if a debtor received any post-petition income related to marijuana *See*: Matthew W. Hoelscher, *Legalization and Reorganization: Marijuana in Chapter 13*, NACTT Quarterly Vol 31, No. 1, at page 20, 2018.

43. "There are a recent series of cases in which each successive decision expands access to the bankruptcy courts by participants in the marijuana industry". Jerrold L. Bregman, *9th Cir. Affirms Ch. 11 Plan Indirectly Supported by State-Legal Marijuana*, ABI

10

Journal, 36, August 2019 commenting the 9th Circuit decision of *In re Cook*, 922 F.3d 1031 (9th Cir. 2019). Also *See*: G. David Dean and Katherine M. Devanney, *Marijuana's Journey from Greenhouse to Courthouse: Can Cannabis Debtors Seek Bankruptcy Protection?* XXXVIII ABI Journal 5, 30-31, 64, May 2019.

44.   The Debtor respectfully states that the factual situation presented in the contested matter before the Court is a matter of first impression and that there is no applicable legal precedent. Thus, the present case provides an opportunity for the Court to expand the access to the Bankruptcy Court to a Debtor who has a "indirect" participation in the "marijuana industry". *In re Cook*, 922 F.3d 1031 (9th Cir. 2019).

### E. THE *IN RE COOK* DECISION: A BANKRUPTCY COURT IS NOT AN OBMBUDSMAN SEEKING OUT POSSIBLE ILLEGALITIES IN EVERY PLAN.

45. In the present case, for the Debtor's Chapter 13 Plan to be confirmed, the proposed Plan must satisfy 11 U.S.C. § 1325(a) which provides that "...the court shall confirm a plan if- ..." the enumerated requirements are met.

46. Section 1325(a)(3), 11 U.S.C. § 1325(a)(3) states that the Court shall confirm a plan if "the plan has been proposed in good faith and not by any means forbidden by law". 11 U.S.C. § 1325(a)(3).

47. The 1st Circuit Court has held that a "totality of circumstances" test should be applied when interpreting the statutory requirement of "good faith" pursuant to 11 USC §1325(a)(3). See *In re Sullivan*, 326 B.R. 204 (1st Cir. 2005).

48. Under the "totality of circumstances" test, the Court must consider the following factors: (1) debtor's accuracy in stating the debts and expenses, (2) debtor's honesty in the bankruptcy process, including whether he has attempted to mislead the court and whether the debtor has made any misrepresentations, (3) whether the Bankruptcy Code is being

11

unfairly manipulated, (4) the type of debt sought to be discharged, (5) whether the debt would be dischargeable in a Chapter 7, and (6) debtor's motivation and sincerity in seeking Chapter 13 relief. *In re Baldassaro*, 338 BR 178 (Bkrptcy. D. N.H. 2006), *In re Sullivan*, 326 B.R. 204 (1st Cir. 2005).

49. In the case of *In re Cook*, *supra.*, one of the five real estate holding companies owned by Michael Cook was leasing a property to "Green Haven" a "LLC" which used the property to grow marijuana. The United States Trustee objected confirmation of the Debtor's Chapter 11 Amended Plan since although Green Haven complied with Washington State Law, the lease itself violated federal law and thus, this violation proved that the plan could not be confirmed since it was proposed by means forbidden by law. *In re Cook*, 922 F.3d 1031, 1032 (9th Cir. 2019).

50. In its decision, the 9th Circuit Court held the following:

> "The problem with the Trustee's theory is that it ignores the plain text of §1129(a)(3), which directs the bankruptcy courts to police the means of a reorganization plan's *proposal,* not its substantive provisions. Resolution of this appeal rests on a straightforward question of statutory interpretation **rather than on any conflict between federal and state drug laws**. We affirm confirmation of the Amended Plan because it was not proposed "by any means forbidden by law'."   *In re Cook*, 922 F.3d 1031, 1032 (9th Cir. 2019) (emphasis supplied).

51. In deciding the *In re Cook, supra.*, case, the 9th Circuit Court cites a 1st Circuit Bankruptcy Appellate Panel case of *Irving Tanning Co. v. Me. Superintendent of Ins. (In re Irving Tanning Co.)*, 496 B. R. 644, 660 (1st Cir. B.A.P. 2013), as follows:

> "Like the First Circuit Bankruptcy Panel, we conclude that § 1129(a)(3) directs courts to look only to the proposal of a plan, not the terms of the plan. *Irving Tanning Co. v. Me. Superintendent of Ins. (In re Irving Tanning Co.)*, 496 B.

12

R. 644, 660 (1st Cir. B.A.P. 2013). This reading accords with both the statutory text, which does not refer to the substance of the plan, and the weight of persuasive authority. *See In re Gen. De. Corp.*, 135 B.R. 1002, 1007 (Bankr. S.D. Fla. 1991) ('Courts addressing the issue have uniformly held that Section 1129(a)(3) does not require that the contents of a plan comply in all respects with the provisions of all nonbankruptcy law and regulations.' (internal quotations omitted))." *In re Cook*, 922 F.3d 1031, 1035 (9th Cir. 2019).

52. Furthermore, the 9th Circuit Court in the *In re Cook* case held that "[W]e do not believe that the interpretation compelled by the text will result in bankruptcy proceedings being used to facilitate violations. ... confirmation of a plan does not insulate debtors from prosecution for criminal activity, even if that activity is part of the plan itself. *In re Food City, Inc.*, 110 B.R. 812 (Bankr. W.D. Tex. 1990)." *In re Cook, supra*, at page 1036; *Cf. In re Way to Grow, Inc.*, 610 B.R. 338, 347 (D. Colo. 2019).

53. Adhering to its textual interpretation of the requirement that "the plan has been proposed in good faith and not by any means forbidden by law" the 9th Circuit Court stated the following:

"There is no need to "convert the bankruptcy judge into an ombudsman without portfolio, gratuitously seeking out possible 'illegalities' in every plan" a result that would be "inimical to the basic function of bankruptcy judges in bankruptcy proceedings." *In re Cook, supra*, at page 1036.

54. In the present case, in order for the Court to decide this contested matter, the Court must determine whether or not under the Federal CSA, the Debtor's employment as a clerical work at a State legal marijuana business is a criminal activity and furthermore, whether or not the wages earned by the Debtor are part of a criminal activity which would result in that the Debtor's proposed Chapter 13 Plan does not meet the §1325(a)(3)

13

requirement since the same was proposed by means forbidden by law, as argued by the
UST in its objection and request for dismissal, Docket No. 16.

55. The Debtor respectfully states that the Court has no need to enter into this
factual determination in the present case. A textual interpretation of the "good faith"
requirement makes it clear that the Debtor's proposed Chapter 13 Plan has been proposed
in good faith and not by any means forbidden by law. 11 U.S.C. §1325(a)(3).

**F.   SHOULD THE COURT DETERMINE THAT THE DEBTOR'S WAGES
STEM *in arguendo* FROM AN ILLEGAL ACTIVITY WHICH MAY NOT
BE USED TO FUND THE PROPOSED PLAN AND *in arguendo* THAT
THE PLAN CANNOT BE CONFIRMED, DISMISSAL OF THE CASE IS
NOT THE ONLY ALTERNATIVE.**

56. In the present case, the primary purpose of the Debtor seeking protection under
Chapter 13 is to protect the Debtor's motor vehicle ("property of the estate") which is the
Debtor's only means of transportation. As previously stated, the secured creditor holding a
lien on the Debtor's 2016 Toyota Yaris was on the "eve" of repossessing said vehicle prior
to the filing of the present case by the Debtor.

57. Should the Court dismiss the present case the Debtor stands to lose her motor
vehicle and only means of transportation. If the Debtor loses her means of transportation,
the Debtor also stands to lose her job, thus the Debtor's household income for a family of
three (3) would be negatively affected considering that the Debtor's employment income is
85% of the total household income.

58. Therefore, it is reasonable to conclude that a dismissal of the present case or a
conversion of the present case to a case under Chapter 7, would result in a difficult and
unfair situation to the Debtor and her two minor age dependents. Furthermore, it seems
reasonable to state that a dismissal or conversion of the present case is not "...in the best
interests of creditors and the estate...". 11 U.S.C §1307(c).

14

59. The question then arises: is there a practical alternative to dismissal in the present case?

60. Under Section 105(a), 11 U.S.C. §105(a), a bankruptcy court "...may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title".

61. The U.S. Supreme Court has stated that "[a] bankruptcy court has statutory authority to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code". *Law v. Siegel*, 571 U.S. 415 (2014).

62. Thus, *in arguendo*, should the Court find "inescapably" that there is "cause" to dismiss the present case and that this result, *in arguendo*, is "necessary" "...to prevent this Court from violating its oath to uphold federal law...", *In re Way to Grow, Inc.*, 597 B. R. 111, 117 (Bankr. D. Colo. 2018), the Debtor respectfully states that there is a practical alternative to dismissing or converting this case.

63. In the case of *In re Johnson*, 532 B. R. 53 (Bankr. W.D. Mich. 2015), the bankruptcy court "...permitted a debtor to remain in chapter 13 on condition that he discontinue growing, selling, and transferring marijuana and cease using property of the estate to further the marijuana business." *In re Burton*, 610 B.R. 633, 640, (9th Cir. 2019; citing: *In re Johnson*, 532 B. R. 53 (Bankr. W.D. Mich. 2015); *In re McGinnis*, 453 B.R. 770 (Bankr. D. Or. 2011).

64. In the case of *In re McGinnis*, 453 B.R. 770, 773 (Bankr. D. Or. 2011), the bankruptcy court stated that if the debtor could propose a plan meeting the requirements of the bankruptcy code, it was prepared to allow its confirmation. *In re Burton*, 610 B.R. 633, 640, (9th Cir. 2019; citing: *In re McGinnis*, 453 B.R. 770 (Bankr. D. Or. 2011).

15

65. In the present case, the Debtor respectfully reiterates that there is no "cause" to dismiss the case since the debtor is merely a clerical employee who does not owns, operates, manages or controls a marijuana State legal business. On the contrary, the Debtor reiterates that the Debtor's Chapter 13 Plan may be confirmed since the same has been proposed in "good faith" and by "no means forbidden by law". 11 U.S.C. Section 1325.

66. However, *in arguendo*, should the Court decide that in the present case there is "cause" to dismiss since the Debtor's Plan cannot be funded with wages stemming from a State legal marijuana business, the Court may Order under Section 105 and its equity powers, that the Plan may be confirmed on the condition that the Plan be funded with other income sources, allowing the Debtor sufficient time to obtain any such funding source(s).

## G. UST'S FAILURE TO DEMONSTRATE "CAUSE" TO DISMISS.

67. Section 1307(c) of the Bankruptcy Code, 11 U.S.C. §1307(c), provides a list of reasons as to why a Chapter 13 case may be dismissed.

68. However, the list of reasons for dismissal provided for in Section 1307(c) is not exclusive. *In re Gonic Realty Trust*, 909 F.2d 624 (1st Cir. 1990).

69. A dismissal of a Chapter 13 case pursuant to Section 1307(c) for "cause" is discretionary, rather than mandatory. *In re Green*, 64 B.R. 530 (B.A.P. 9th Cir. 1986).

70. In the case at bar, the reasons for dismissing the present case for "cause" pursuant to the UST's request for dismissal do not fall within the list of reasons to dismiss a case under Section 1307(c).

71. Therefore, in order to dismiss the present case the Court, in its discretion, must find that the Debtor's acts are such egregious and that the Debtor has acted in such "bad faith" that there is "cause" to dismiss the case.

16

72. The Debtor respectfully states that in the present case there is no "cause" to dismiss the Chapter 13 case since the situation concerning the Debtor's source of income to fund the Debtor's proposed Chapter 13 Plan, is extraneous to the confirmation requirements under 11 U.S.C. §1325.

73. In the present case, the UST objects the confirmation of the Debtor's proposed Chapter 13 Plan and requests the case dismissal on the grounds that the Debtor's wages result from illegal activity that violate federal law under the CSA, that these illegal wages cannot be remitted to the Chapter 13 trustee and thus, the chapter 13 plan should not be confirmed as it would be funded by continuing illegal activity and wages of the Debtor. Therefore, if the plan cannot be confirmed, the case must be dismissed. *United States Trustee's Objection to Confirmation and Motion to Dismiss Case Under 11 U.S.C. Section 1307*, at page 10, Docket No. 16.

74. In a decision on bankruptcy law as it relates to marijuana-based businesses, Judge Howard R. Tallman of the United States Bankruptcy Court for the District of Colorado held that a marijuana based business intending to continue to operate as such cannot propose a Chapter 11 reorganization plan in good faith-and, in turn, the inability to propose a reorganization plan in good faith is "cause" to dismiss a Chapter 11 proceeding. *In re Way to Grow*, Inc., 610 B.R. 338, 345, (Bankr. D. Colo. 2019) *citing*: *In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. 799, 809, (Bankr. D. Colo. 2012).

75. In the present case, the question before the Court is different. Since in the present case the Debtor is not a "marijuana-based business", nor does the Debtor manages, operates or has control over a "marijuana-based business", the Debtor can propose a Plan in good faith thus, the above cited cases do not apply to the contested matter before the Court.

17

76. Therefore, in the present case the UST's position that since the Debtor's wages stem from an illegal activity that violate Federal law under the CSA and that these "illegal wages" cannot be remitted to the Chapter 13 Trustee and thus, the chapter 13 plan should not be confirmed as it would be funded by continuing illegal activity and wages of the Debtor, is clearly an argument based on mere conclusions that appear to not have evidentiary support.

77. The Debtor respectfully states that the following are undisputed facts:

> ---the Debtor's wages stem from a clerical work, which *per se* is not an "illegal activity";
>
> ---the Debtor does not owns, operates, manages or controls the marijuana State legal business for whom she works as a clerical employee;
>
> ---since as a clerical employee the Debtor has no control over a marijuana State legal business, the Debtor is not aiding or abetting a criminal activity; and
>
> ---the Debtor is making the payments to the Chapter 13 Trustee from her personal bank account.

78. Therefore, it is reasonable to state that the Debtor's proposed Chapter 13 Plan does not lack good faith when it is funded from the wages of a clerical employee of a marijuana State legal business since the Debtor has not shown " ..atypical conduct that constitutes an abuse of the bankruptcy process". See *Marrama v. Citizens Bank*, 549 U.S. 365 (2007); *Berliner v. Pappalardo*, 674 F.3d 78, 82 (1st Cir. 20012).

79. As stated by the Honorable Judge Brian K. Tester, "[T]he First Circuit has determined that, 'in all events, good faith is a concept not a construct. It is a concept that derives from equity. This matters, because equitable concepts are particularly insusceptible to per se rules.' *In re Puffer*, 674 F.3d 78, 81 (1st Cir. 2012). **Good faith is an abstract**

18

**idea generalized from particular circumstances and not a working assumption**." *In re Lopez*, *Opinion and Order*, Case No. 15-04334 BKT13 (Bankr. D. P.R. 2019) (emphasis supplied).

80. In summary, under the circumstances of the present case, it is reasonable to conclude that the Debtor has not acted in such egregious manner or acted in "bad faith" sufficient to make a finding that there is "cause" to dismiss the present case.

**IV. CONCLUSION**

81. For the above stated reasons, the Debtor respectfully states that the *Debtor's Amended Chapter 13 Plan*, Docket No. 20, has been proposed in good faith and not by any means forbidden by law, and that the same complies with all other confirmation requirements under Section 1325, thus, the UST's objection to confirmation and request for dismissal should be denied.

**WHEREFORE,** based on the above stated, the Debtors respectfully prays that this Honorable Court grant the present Reply, requesting that the United States Trustee's objection to confirmation and request for dismissal, Docket No. 16, be denied, and respectfully requests that the Debtor's *Amended Chapter 13 Plan*, Docket No. 20, be confirmed.

**I HEREBY CERTIFY** that on this same date a copy of this notice was sent via electronically with the Clerk of the Court using CM/ECF systems which will send notifications of such to the United States Trustee's Office District of Puerto Rico, Monsita Lecaroz Arribas, Esq., Assistant U.S. Trustee; the Chapter 13 Trustee Alejandro Oliveras Rivera, Esq.; and to all other CM/ECF participants; and I also certify that I have mailed by United States Postal Service copy of this motion to the following non-participant: the

19

Debtor, Joelyn Aguayo Diaz, Urb Valle Tolima O 13 Emma R Vicenty Street Caguas PR

00725, in the above captioned case.

**RESPECTFULLY SUBMITTED**.   In San Juan, Puerto Rico, this 24th day of

November, 2020.

/s/***Roberto Figueroa Carrasquillo***
USDC #203614
RFIGUEROA CARRASQUILLO LAW OFFICE PSC
ATTORNEY FOR the DEBTOR
PO BOX 186 CAGUAS PR 00726-0816
TEL 787-744-7699 787-963-7699
FAX 787-746-5294
EMAIL: rfc@rfigueroalaw.com